

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OKLAHOMA

FILED

APR 0 6 2026

Heidi D. Campbell, Clerk
U.S. DISTRICT COURT

In re:
GREEN COPPER HOLDINGS, LLC, et al.,
Substantively Consolidated Debtors.

Case No. 25-10088
(Chapter 7)

CYNTHIA BLANCHARD,
Claimant-Appellant,

v.

PATRICK J. MALLOY III, Chapter 7 Trustee,
Appellee.

Civil Action No. 4:26-cv-00140-CVE

Appeal from the United States Bankruptcy Court
for the Northern District of Oklahoma


APPENDIX TO AMENDED APPELLANT'S OPENING BRIEF

*1*

# APPENDIX TABLE OF CONTENTS

Bankr. Dkt. 432 – Memorandum Opinion .................................................. p. 3

Bankr. Dkt. 433 – Order Sustaining Objection and Disallowing Claims .... p. 16

Bankr. Dkt. 452 – Notice of Appeal ......................................................... p. 18

Bankr. Dkt. 381 – Order Setting Hearing .................................................. p. 23

Bankr. Dkt. 412 – Order Setting Evidentiary Hearing by Video Conference . p. 24

Bankr. Dkt. 401 – Trustee's Brief in Support of Objection to Claim

(filed January 9, 2026), including Exhibit List and Witness List ........... p. 30

Bankr. Dkt. 402 – Motion to Strike ......................................................... p. 44

Bankr. Dkt. 403 – Order Denying Motion to Strike .................................. p. 49

Bankr. Dkt. 404 – Notice of Non-Appearance and Continuing Objection ... p. 50

Bankr. Dkt. 405 – Minute Entry .............................................................. p. 52

Bankr. Dkt. 406 – Corrected Minute Entry ............................................... p. 53

Bankr. Dkt. 391 – Designation of Record and Notice of Non-Appearance .. p. 54

Bankr. Dkt. 458 – Motion to Supplement the Record on Appeal

(with Exhibits) ...................................................................................... p. 57

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

Filed/Docketed
Feb 27, 2026

IN RE:

**GREEN COPPER HOLDINGS, LLC,**

Debtor,

**COPPER TREE, INC.,**

Debtor,

**THE INN AT PRICE TOWER INC.,**

Debtor.

**Case No. 25-10088-T
Chapter 7**

**Substantively consolidated with
Case No. 25-10084-T**

## MEMORANDUM OPINION

THIS MATTER comes before the Court pursuant to Trustee's Objection to (i) Claim No. 2-2 Filed in Copper Tree Inc., and (ii) Claim No. 1-2 filed in Green Copper Holdings, LLC, . . . in the Amount of $269,554.69 and $285,107.88 Respectively (the "Objection"),[1] filed by Patrick J. Malloy ("Trustee"), the chapter 7 trustee appointed to administer this case; the Response,[2] filed by Cynthia Diane Blanchard ("Blanchard"); Notice of Intent to Rest on the Docket for Claim 1-2,[3] filed by Blanchard; Claimant's Designation of Record and Notice of Non-Appearance Regarding January 12, 2026 Claim Hearing,[4] filed by Blanchard; Notice of Filing Previously-Produced Discovery in Support of Claimant's Designation of Record,[5] filed by Blanchard; Trustee's Brief in Support of the Objection,[6] filed by Trustee; and Notice of Non-Appearance and Continuing

---

[1] ECF No. 144.
[2] ECF No. 202.
[3] ECF No. 357.
[4] ECF No. 391.
[5] ECF No. 396.
[6] ECF No. 401.

Objection,[7] filed by Blanchard.  The Court held a hearing in this contested matter on January 12, 2026 (the "Hearing"), after which the Court took the Objection and related matters under advisement. The following findings of fact and conclusions of law are made pursuant to Federal Rule of Civil Procedure 52, made applicable to this contested matter by Federal Rules of Bankruptcy Procedure 7052 and 9014.[8]

## Jurisdiction

The Court has jurisdiction over this bankruptcy case pursuant to 28 U.S.C. § 1334(b).[9] Venue is proper pursuant to 28 U.S.C. § 1409. Reference to the Court of the bankruptcy case is proper pursuant to 28 U.S.C. § 157(a). Matters concerning allowance or disallowance of claims against the estate are core proceedings under 28 U.S.C. § 157(b)(2)(B).

## Findings of Fact

Green Copper Holdings, LLC ("GCH") and Copper Tree, Inc. ("Copper Tree") each filed voluntary petitions for relief under chapter 7 of the United States Bankruptcy Code on January 22, 2025 (the "Petition Date").[10] The cases were substantively consolidated under Case No. 25-10088 on June 11, 2025.  The Court later substantively consolidated an entity named The Inn at Price Tower Inc. (the "Inn"), a wholly owned subsidiary of Copper Tree, with the consolidated debtors under Case No. 25-10088 (hereinafter referring to all three entities as the "Debtors").

Included among the assets of this bankruptcy estate is a building and contents located in Bartlesville, Oklahoma, known as the Price Tower (the "Price Tower") designed by Frank Lloyd

---

[7] ECF No. 404.

[8] Unless otherwise noted, all references to "Rules" are to the Federal Rules of Bankruptcy Procedure, as amended and effective December 1, 2025.

[9] Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 et seq.

[10] Case No. 25-10088-T and 25-10084-T, respectively.  Unless otherwise noted, all references to ECF document or claim numbers are to Case No. 25-10088.

2

Wright, which since 1974 has been included in the National Register of Historic Places, and since 2007 has been included on the United Nations Environment, Scientific and Cultural Organization ("UNESCO") list of World Heritage Sites. On May 1, 2025, this Court authorized the sale of the Price Tower, inclusive of real and tangible personal property located therein, to a third party. The sale generated funds that are being administered and distributed by Trustee for the benefit of creditors and the estate. Among the claimants for those funds is Blanchard.

Blanchard has opted to proceed without the benefit of legal counsel, or pro se, in this matter. Most of these facts regarding Blanchard are drawn from pleadings and documents she filed in this case in support of her claim. The Court takes judicial notice of their filing and contents.[11] The majority of the facts presented herein are provided for background and context to the reader, but their truth or falsity are not critical to the outcome of the issues before the Court. Early in this litigation, Blanchard indicated that she intended to "rest on the docket" with respect to her claim, that she would submit all arguments in writing, and that she would not appear at any further hearings in this matter.[12] This is, of course, her right. At a hearing held in this matter on September 2, 2025, the Court stated as much. Blanchard has since indicated that she "relied" on the Court's statement that she would be allowed to rest on the docket.[13] The Court is unsure what this statement means. The Court cannot require a claimant to participate in the claims litigation process or to provide evidentiary support for their claim. However, Blanchard's decision to stand on the written record does not operate to deny an objecting party the opportunity to present evidence at a properly noticed hearing.[14]

---

[11] *See* Fed. R. Evid. 201.
[12] See also ECF Nos. 391, 404.
[13] *See* ECF No. 384, at 26 ¶ 19.
[14] Rule 3007.

Blanchard is the founder and majority shareholder of Copper Tree. On the Petition Date, Blanchard held approximately 90.48% of the equity of Copper Tree. Blanchard served as Chief Executive Officer of Copper Tree from its formation in 2022 until the Petition Date. She also served as a managing member of GCH from its formation in 2022 until the Petition Date, and as President/Corporate Officer of the Inn from its formation in 2022 until the Petition Date. She took no salary or other form of compensation for her roles with any of the Debtors.

Blanchard filed claims in both the GCH and Copper Tree cases prior to their consolidation. The parties have agreed that the claims are duplicative and that Claim No. 1-2, filed in Case No. 25-10088, is the operative claim (the "Blanchard Claim").[15] The Blanchard Claim is filed on Official Form 410 and seeks $285,107.88 from the estate as an unsecured, non-priority claim, noting the basis for the claim is a "loan."[16] Attached to the Blanchard Claim is an agreement purportedly "made and entered into as of" September 30th, 2022 (the "Loan Agreement"), between Blanchard, individually, as "Lender" and Copper Tree, signed by Blanchard as CEO, as "Borrower."[17] The signatures on the Loan Agreement are undated. The operative terms of the Loan Agreement are as follows:

---

[15] *See* Case No. 25-10084 ECF Claim No. 2-2 Pt. 2.
[16] *See* ECF Claim No. 1-2.
[17] *Id.* Pt. 2, at 1.

**1. Loan Terms**

**1.1 Loan Amount.** This Agreement establishes an open-ended loan facility under which Borrower may borrow and repay funds from time to time. The total outstanding principal shall not exceed an aggregate amount determined and recorded in the Parties' bookkeeping software, reconciled with the Parties' bank account records.

**1.2 Disbursement.** Loan disbursements shall be made by Lender to Borrower upon mutual agreement of the Parties and recorded in the Parties' bookkeeping software.

**1.3 Interest Rate.** The Loan shall bear interest at the rate of 5% per annum, calculated on the basis of a 365-day year and the actual number of days elapsed.

**1.4 Repayment Terms.**

**(a) Lump-Sum Repayment.** Borrower shall repay the full outstanding principal and all accrued interest in a single lump sum upon mutual agreement or on demand, provided that Lender gives Borrower at least 30 days written notice of the repayment date.

**(b) Loan Reconciliation.** Loan balances and accrued interest shall be reconciled periodically based on records maintained in the Parties' bookkeeping software and corresponding bank account statements.

**1.5 Prepayment.** Borrower may prepay all or part of the outstanding Loan balance at any time without penalty, provided that any prepayment is accompanied by all accrued interest as of the prepayment date.

. . .

**4. Miscellaneous**

**4.1 Governing Law.** This Agreement shall be governed by and construed in accordance

7

with the laws of the State of Delaware. [18]

No other supporting documents are attached to the Blanchard Claim.[19]

Attached to the proof of claim filed by Blanchard in the Copper Tree case,[20] is a spreadsheet containing entries dated between February 27, 2023, and January 21, 2025 (the "Spreadsheet").[21] The Spreadsheet does not contain any title, label, or certification regarding its creation or maintenance. At times referred to as the QuickBooks Online Transaction Log[22] or the Loan Ledger,[23] the Spreadsheet has been described by Blanchard as a record of deposits and withdrawals between her and the individual Debtors.[24] The Court accepts the Spreadsheet as a document submitted by Blanchard in support of her claim. Beyond that, the Court gives the Spreadsheet very little evidentiary weight. No party has presented evidence, either by testimony or certification, regarding how, when, or by whom the Spreadsheet was created and maintained. Without evidence of these foundational facts, the Spreadsheet does not meet the criteria to qualify for an exception under Federal Rule of Evidence 803(6) as a business record.

At the Hearing, Trustee offered the testimony of Donna Keffer ("Keffer") regarding the operations and business affairs of Debtors. Both before and after the acquisition of the Price Tower by Debtors, Keffer served as Executive Director of the Price Tower Arts Center and as the General Manager of the Inn. After the acquisition of the Price Tower, Keffer was involved in the financial affairs of Debtors, including writing checks and reviewing financial statements, and was aware of

---

[18] *Id.* at 2.

[19] *See infra* note 21.

[20] *See* Case No. 25-10084 ECF Claim No. 2-1 Pt. 2.

[21] *Id. See also* Trustee's Ex. No. 5. For purposes of this proceeding, the Court will treat both the Loan Agreement and the Spreadsheet as if they had been attached to the Blanchard Claim in Case No. 25-10088.

[22] *See* ECF No. 202, Ex. C at 15.

[23] ECF No. 396-1 at 6.

[24] *Id.*

*8*

Debtors' monthly income and expenses. According to Keffer, when one of the Debtors was in need of funds, she would reach out to Blanchard, who would then write a check to be deposited in the appropriate business account. The requests for funds made by Keffer were generally made on an emergency basis for the payment of payroll, outstanding bills, and debt. Keffer was not aware of any long-term planning or regularity of the funds advanced by Blanchard. At no time during her tenure with Debtors or the Price Tower was Keffer aware of the Loan Agreement or any promissory notes between Blanchard and any of the Debtor entities.

Keffer testified that she had not seen any supporting documents, such as cancelled checks or wire transfers, related to the entries on the Spreadsheet. Keffer was not aware of any internal corporate documents kept by Debtors that recorded interest due on the funds advanced by Blanchard. Although Keffer indicated some familiarity with the Spreadsheet, she did not testify whether it was a document kept during the regular course of business of Debtors. Keffer testified that despite making several withdrawals of funds from Debtors, Blanchard did not indicate that those funds were repayment of a loan; nor did Blanchard make any formal demand for repayment of the advanced funds. Keffer testified that she was not aware of any "aggregate amount determined and recorded in the Parties' bookkeeping software," as described in the Loan Agreement, or of any efforts to reconcile a loan from Blanchard with the bank account records of Debtors.[25]

Although Blanchard did not introduce evidence or testify at the Hearing, Trustee offered documents filed by Blanchard in this case, which the Court admitted as evidence.[26] The statements contained in those documents may be considered by the Court when offered against Blanchard by

---

[25] *See* Case No. 24-10088 ECF Claim No. 1-2 Pt. 2, at 1, § 1.1.
[26] Trustee's Ex. 2 (ECF No. 396 with attachments).

7

the Trustee.[27] In addition to the Spreadsheet, Trustee introduced a copy of responses by Blanchard to interrogatories issued by Trustee during the discovery phase of this contested matter (the "Blanchard Responses").[28] In the Blanchard Responses, Blanchard asserts her belief that all advances she made to Debtors were loans. Blanchard describes the process of making advances to Debtors based on requests for funding made by accounting personnel.[29] Blanchard indicates that her loan balance was reflected in the Debtors' monthly financial statements and debt schedules, although no evidence of these records was provided.[30]

At the Hearing, Trustee presented a document titled "Price Tower Itemized List of Debt Owed," dated as of March 6, 2024 (the "Debt Schedule").[31] Keffer testified that the Debt Schedule was a business record of Debtors that was prepared monthly, was kept in the ordinary course of Debtors' business, and reflected all debt owed by Debtors. Keffer stated the Debt Schedule was a record used by Debtors that was presented to potential lenders and investors in Blanchard's presence to solicit additional capital for business operations. The Debt Schedule shows the total liability of Debtors on March 6, 2024, including disputed liabilities, is $1,505,710.68. Notably, there is no mention of Blanchard anywhere on the Debt Schedule, either as a vendor, wage or contract laborer, loan creditor, disputed liability, or otherwise.

To the extent the "Conclusions of Law" contain any items which should more appropriately be considered "Findings of Fact," such items are incorporated herein by this reference.

---

[27] Fed. R. Evid. 801(c), (d)(2)(A).
[28] Trustee's Ex. 2, at 2-5 (ECF No. 396-1).
[29] Id. at 2-7 to -8 (Response to Interrogatory No. 5).
[30] Id. at 2-9 (Response to Interrogatory No. 7).
[31] Trustee's Ex. 4.

8

## Conclusions of Law

### A. *The Prima Facie Effect of Proof of Claim and Burdens of Proof*

Section 101(5) of the United States Bankruptcy Code defines a "claim" to be a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured[.]"[32] A "creditor" is defined as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor[.]"[33] Section 501 provides that "[a] creditor . . . may file a proof of claim."[34] Section 502 states that a claim filed under § 501 is deemed allowed unless a party in interest objects.[35] That section also provides that upon such objection, after notice and a hearing, the court shall determine the amount of the claim and allow it in that amount, except in nine specifically enumerated situations.[36] Courts have no discretion to disallow claims for reasons beyond those stated in § 502(b)(1)–(9).[37] Section 502(b)(1), relevant here, states that the court shall allow a claim, "except to the extent that—such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured[.]"[38]

In addition to the Code provisions cited above, the Federal Rules of Bankruptcy Procedure also govern the filing of proofs of claim. Rule 3001(a) tells us that "[a] proof of claim is a written

---

[32] § 101(5)(A).

[33] § 101(10)(A).

[34] § 501(a).

[35] § 502(a).

[36] § 502(b).

[37] *In re Aerospace Eng'g & Support, Inc.*, 662 B.R. 168, 178-79 (Bankr. D. Utah 2024); *In re Cluff*, 313 B.R. 323, 331 (Bankr. D. Utah 2004), *aff'd sub nom. Cluff v. eCast Settlement*, No. 2:04-CV-978, 2006 WL 2820005 (D. Utah Sept. 29, 2006).

[38] § 502(b)(1).

statement of a creditor's claim. It must substantially conform to Form 410."[39] Rule 3001(c) goes

on to require that when a claim is based on a writing, "the creditor must file a copy with the proof

of claim."[40] Rule 3001(f) provides the evidentiary effect of a properly filed proof of claim by

stating that "[a] proof of claim signed and filed in accordance with these rules is prima facie

evidence of the claim's validity and amount."[41] Prima facie evidence of a claim creates a rebuttable

presumption of its validity—it is sufficient to establish a fact or raise a presumption *unless*

contradictory evidence is produced to disprove or rebut the initial claim.[42] If no party objects to

the proof of claim, the claim may be allowed as filed.[43] If a party in interest objects, the court,

after notice to the parties and an opportunity for hearing, will make a determination of the validity

and amount of the claim.[44] The objecting party will bear the initial burden of production to

overcome the presumption of validity.[45] The objector must present evidence of probative force

equal to that of the allegations contained in the proof of claim.[46] If the objecting party raises

sufficient evidence to cause the court to question the validity or amount of the claim, the burden

then shifts back to the claimant, who must present sufficient evidence to prove, by a preponderance

of the evidence, that it holds a valid claim against the bankruptcy estate.[47]

---

[39] Rule 3001(a).

[40] Rule 3001(c).

[41] Rule 3001(f).

[42] *Prima Facie Evidence*, Black's Law Dictionary (12th ed. 2024).

[43] § 502(a).

[44] § 502(b); Rule 3007.

[45] *In re Broadband Wireless Int'l Corp.*, 295 B.R. 140, 145 (10th Cir. BAP 2003) (citing *In re Geneva Steel Co.*, 260 B.R. 517, 524 (10th Cir. BAP 2001), *aff'd*, 281 F.3d 1173 (10th Cir. 2002).

[46] *Id.*; *Wright v. Holm (In re Holm)*, 931 F.2d 620, 623 (9th Cir. 1991) (citing 3 L. King, *Collier on Bankruptcy* § 502.02, at 502–22 (15th ed. 1991)).

[47] *In re Broadband Wireless*, 295 B.R. at 145 (citing *In re Geneva Steel Co.*, 260 B.R. at 524); *Agricredit Corp. v. Harrison (In re Harrison)*, 987 F.2d 677, 680 (10th Cir. 1993); *In re Aerospace Eng'g*, 662 B.R. at 179.

### B. *Blanchard Claim as Prima Facie Evidence*

The Blanchard Claim is properly filed on Official Form 410, indicates GCH owes Blanchard an unsecured debt based on a "loan," and is executed by Blanchard in her personal capacity.[48] The Loan Agreement, which is the writing upon which Blanchard bases her claim, is attached.[49] In addition, the Court considers the Spreadsheet as if it were attached to the Blanchard Claim, given the agreement between Blanchard and Trustee to treat the Blanchard Claim as the operative claim. Together these documents satisfy the requirement of Rule 3001(c) that a claim that is based on a writing include a copy of that writing. While the substance and legal effect of the Blanchard Claim are the subject of the Objection, the Court finds it is sufficient to serve as prima facie evidence of Blanchard's claim against the estate. As a result, the Trustee bears the initial burden of production to rebut the presumption of validity of the Blanchard Claim.

### C. *Trustee's Objection and Burden of Production*

Trustee raises several evidentiary challenges to the Blanchard Claim, but the discussion of one will suffice.[50] Trustee offered the Debt Schedule and Keffer's testimony that it was kept as a business record evidencing the total debt owed by Debtors to their creditors, as loans, trade debt, deferred salaries, or disputed liabilities, as of March 6, 2024. The Debt Schedule is credible evidence that Debtors did not treat Blanchard's advances as a loan or debt as of March 6, 2024. This evidence directly contradicts the supporting documents submitted by Blanchard. The Loan Agreement suggests advances made by Blanchard to Debtors after September 30, 2022, would be

---

[48] Trustee's Ex. 1.

[49] Trustee's Ex. 1-4.

[50] In addition to the concerns regarding the Spreadsheet, discussed *supra*, Trustee also challenges the validity of the Loan Agreement, based on the fact that the signatures are not dated or notarized, calling into question when the document was actually signed. Based on the resolution of this matter, the Court need not address these issues.

treated as a loan; the Spreadsheet shows that as of March 6, 2024, the balance of Blanchard's unrepaid advances to Debtors was $191,608.69. The Debt Schedule, at a minimum, raises serious doubts whether Debtors considered the advances made by Blanchard to be debt, and whether they were treated as such by Debtors and Blanchard in their pre-bankruptcy business dealings. The Debt Schedule, along with Keffer's testimony, is sufficient to cause the Court to doubt the veracity of the allegations contained in the Blanchard Claim. The Court finds the Trustee has met his burden of production to shift the burden of going forward to Blanchard.[51]

D. *Blanchard's Burden of Persuasion to Prove Validity and Amount of Claim*

The burden of persuasion lies with Blanchard to show, by a preponderance of evidence, that she holds a valid, enforceable claim against Debtors in an amount certain.[52] Under Delaware law, made applicable to this case under the Loan Agreement, "a party seeking to enforce a contract bears the burden of proving the existence of a contract by a preponderance of the evidence. The elements necessary to prove the existence of an enforceable contract are: (1) the intent of the parties to be bound; (2) sufficiently definite terms; and (3) consideration."[53] "Whether a party manifested an intent to be bound is a question of fact."[54] The Debt Schedule and the testimony of Keffer have raised serious doubts in the mind of the Court whether the signatures on the Loan Agreement and

---

[51] *In re Harrison*, 987 F.2d at 680 ("If objection is made to the proof of claim, the creditor has the ultimate burden of persuasion as to the validity and amount of the claim."); *Redmond v. Jenkins (In re Alternate Fuels, Inc.)*, 789 F.3d 1139, 1153 (10th Cir. 2015).

[52] *In re Harrison*, 987 F.2d at 680.

[53] *REM OA Holdings, LLC v. N. Gold Holdings, LLC*, No. 2022-0582, 2023 WL 6143042, at *26 (Del. Ch. Sept. 20, 2023). Although no party has raised the issue, the Court will assume the law of Delaware applies to the validity of the Loan Agreement based on its choice of law provision. *See Dang v. UNUM Life Ins. Co. of Am.*, 175 F.3d 1186, 1190 (10th Cir. 1999) ("A federal court adjudicating state law claims must apply the forum state's choice of law principles."); *SFF-TIR, LLC v. Stephenson*, 250 F. Supp. 3d 856, 1026 (N.D. Okla. 2017) ("In Oklahoma, the state choice-of-law rule for contracts is that the Oklahoma courts will enforce a contract's choice-of-law clause whenever that choice-of-law clause is valid under ordinary Oklahoma contract law principles.").

[54] *Eagle Force Holdings, LLC v. Campbell*, 235 A.3d 727, 735 (Del. 2020).

their subsequent course of dealing indicated an intent of the parties to be bound by its terms. Without proof of the parties' intent to be bound by the Loan Agreement, the Court cannot find it is an enforceable contract. The Court also finds that the Spreadsheet lacks sufficient indicia of trustworthiness for it to be considered credible evidence of the amount Blanchard advanced to Debtors. In the absence of credible evidence regarding the creation and maintenance of the Spreadsheet, its contents are of little evidentiary value. Even if the Court were to find the Loan Agreement was an enforceable contract, the Court has no credible evidence on which to determine the amount of her claim. The Court finds Blanchard has not met her burden to prove she holds a valid claim against the estate. As a result, the Blanchard Claim must be disallowed pursuant to § 502(b)(1).[55]

E. *Recharacterization of Debt as Equity*

## Conclusion

The Trustee's Objection is sustained. Claim No. 1-2, in Case No. 25-10088-T, filed by Cynthia Diane Blanchard, is disallowed.[56] A separate judgment consistent with this Memorandum Opinion is entered concurrently herewith.

Dated this 27th day of February, 2026.

BY THE COURT:

PAUL R. THOMAS, CHIEF JUDGE
UNITED STATES BANKRUPTCY

---

[55] Trustee also requests that if the Court finds Blanchard holds a valid claim, that any advances made to Debtors be "recharacterized" as equity contributions. *In re Alternate Fuels*, 789 F.3d at 1147 ("The practical effect of recharacterizing a putative debt claim as an equity interest is subordination, since a corporation repays capital contributions only if and when it has satisfied all other obligations.") (citing *In re AutoStyle Plastics, Inc.*, 269 F.3d 726, 749 (6th Cir. 2001)). While the Court acknowledges that it has the power pursuant to § 105(a) to recharacterize putative debt as equity, it does not find cause to pursue that route in this case. *In re Alternate Fuels*, 789 F.3d at 1146. *See also Sender v. Bronze Group, Ltd. (In re Hedged-Invs. Assocs., Inc.)*, 380 F.3d 1292, 1297 (10th Cir. 2004) (adopting 13 factor test for recharacterization); *Sinclair v. Barr (In re Mid-Town Produce Terminal, Inc.)*, 599 F.2d 389, 392-94 (10th Cir. 1979) (adopting procedure for recharacterization). In the absence of a valid claim, there is nothing for the Court to recharacterize.

[56] For the avoidance of doubt, the corresponding order will also disallow Blanchard's claim in Case No. 25-10084-T.

13

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

IN RE:

**GREEN COPPER HOLDINGS, LLC,**

Debtor,

**COPPER TREE, INC.,**

Debtor,

**THE INN AT PRICE TOWER INC.,**

Debtor.

**Case No. 25-10088-T**
**Chapter 7**

**Substantively consolidated with**
**Case No. 25-10084-T**

Filed/Docketed
Feb 27, 2026

**ORDER SUSTAINING OBJECTION AND**
**DISALLOWING CLAIMS**

Presently before the Court is the Trustee's Objection to (i) Claim No. 2-2 Filed in Copper Tree Inc., and (ii) Claim No. 1-2 filed in Green Copper Holdings, LLC, by Cynthia Diane Blanchard ("Cynthia") in the Amount of $269,554.69 and $285,107.88 Respectively, at ECF No. 144,[1] filed by Patrick J. Malloy, the chapter 7 trustee appointed to administer this case; the Response To Trustee's Objection To Claims Filed By Creditor Cynthia Diane Blanchard, at ECF No. 202; the Notice of Intent to Rest on the Docket for Claim 1-2, at ECF No. 357, filed by Cynthia Diane Blanchard; the Claimant's Designation of Record and Notice of Non-Appearance Regarding January 12, 2026 Claim Hearing, at ECF No. 391, filed by Cynthia Diane Blanchard; the Notice of Filing Previously-Produced Discovery in Support of Claimant's Designation of Record, at ECF No. 396, filed by Cynthia Diane Blanchard; the Trustee's Brief in Support of the Objection, at ECF No. 401, filed by Patrick J. Malloy; and the Notice of Non-Appearance and Continuing

---

[1] Unless otherwise noted, all references to ECF document or claim numbers are to Case No. 25-10088.

16

Objection, at ECF No. 404, filed by Cynthia Diane Blanchard. The Court held a hearing on the Trustee's Objection and related matters on January 12, 2026. The issues having been duly considered and a decision having been duly rendered, for the reasons set forth in the Memorandum Opinion filed concurrently herewith,

**IT IS HEREBY ORDERED** that Trustee's Objection to (i) Claim No. 2-2 Filed in Copper Tree Inc., and (ii) Claim No. 1-2 filed in Green Copper Holdings, LLC, by Cynthia Diane Blanchard ("Cynthia") in the Amount of $269,554.69 and $285,107.88 Respectively, at ECF No. 144, filed by Patrick J. Malloy, Trustee herein, is hereby SUSTAINED.

**IT IS FURTHER ORDERED** that Proof of Claim No. 1-2, filed in Case No. 25-10088-T, filed by Cynthia Diane Blanchard, in the amount of $285,107.88 for "loan" is DISALLOWED.

**IT IS FURTHER ORDERED** that Proof of Claim No. 2-2, filed in Case No. 25-10084-T, filed by Cynthia Diane Blanchard, in the amount of $269,554.69 for "loan" is DISALLOWED.

Dated this 27th day of February, 2026.

BY THE COURT:

_____
PAUL R. THOMAS, CHIEF JUDGE
UNITED STATES BANKRUPTCY

8090.1

Official Form 417A (12/23)

In The United States Bankruptcy Court
For The Northern District Of Oklahoma
In re:
Green Copper Holdings, LLE;
Copper Tree Inc.; &
Inn At Price Tower, Inc.
Substantially Consolidated
Debtors

CASE No: 25-10088
CHAPTER 7

[Caption as in Form 416A, 416B, or 416D, as appropriate]

# NOTICE OF APPEAL AND STATEMENT OF ELECTION

## Part 1: Identify the appellant(s)

1. Name(s) of appellant(s): Cynthia Dian Blanchard

2. Position of appellant(s) in the adversary proceeding or bankruptcy case that is the subject of this appeal:

For appeals in an adversary proceeding.

☐ Plaintiff
☐ Defendant
☐ Other (describe) _____

For appeals in a bankruptcy case and not in an adversary proceeding.

☐ Debtor
☑ Creditor
☐ Trustee
☐ Other (describe) _____

## Part 2: Identify the subject of this appeal

1. Describe the judgment—or the appealable order or decree—from which the appeal is taken:

Order Disallowance of Claim, Denial of 9023 motion

2. State the date on which the judgment—or the appealable order or decree—was entered:

March 10, 2026

## Part 3: Identify the other parties to the appeal

List the names of all parties to the judgment—or the appealable order or decree—from which the appeal is taken and the names, addresses, and telephone numbers of their attorneys (attach additional pages if necessary):

1. Party: Chapter 7 Trustee Attorney: Patrick J. Malloy III Trustee Chapter 7
   Patrick J. Malloy III
   _____
   _____
   _____

2. Party: _____ Attorney: _____
   _____
   _____
   _____

Official Form 417A          Notice of Appeal and Statement of Election          • page 1

*18*

## Part 4: Optional election to have appeal heard by District Court (applicable only in certain districts)

If a Bankruptcy Appellate Panel is available in this judicial district, the Bankruptcy Appellate Panel will hear this appeal unless, pursuant to 28 U.S.C. § 158(c)(1), a party elects to have the appeal heard by the United States District Court. If an appellant filing this notice wishes to have the appeal heard by the United States District Court, check below. Do not check the box if the appellant wishes the Bankruptcy Appellate Panel to hear the appeal.

☑ Appellant(s) elect to have the appeal heard by the United States District Court rather than by the Bankruptcy Appellate Panel.

## Part 5: Sign below

_Cynthia Dian Blanchard_   Date: _March 10, 2026_
Signature of attorney for appellant(s) (or appellant(s) if not represented by an attorney)

Name, address, and telephone number of attorney (or appellant(s) if not represented by an attorney):
_Cynthia Dian Blanchard_
_414 S.E. Washington Blvd. Ste. 205_
_Bartlesville, OK 74006_
_310-435-5707_

Fee waiver notice: If appellant is a child support creditor or its representative and appellant has filed the form specified in § 304(g) of the Bankruptcy Reform Act of 1994, no fee is required.

[Note to inmate filers: If you are an inmate filer in an institution and you seek the timing benefit of Fed. R. Bankr. P. 8002(c)(1), complete Director's Form 4170 (Declaration of Inmate Filing) and file that declaration along with the Notice of Appeal.]

19

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

In re:
**Green Copper Holdings, LLC;**
**Copper Tree, Inc.; and**
**Inn at Price Tower, Inc.,**
Substantively Consolidated Debtors.

**Case No. 25-10088**
Chapter 7

# NOTICE OF APPEAL

Notice is hereby given that Cynthia Diane Blanchard, creditor and claimant in the above-captioned bankruptcy case, hereby appeals to the United States District Court for the Northern District of Oklahoma from the following orders of this Court:

1.   Order Sustaining Objection and Disallowing Claims, entered February 27, 2026 (ECF No. 433);

2.   Memorandum Opinion, entered February 27, 2026 (ECF No. 432);

3.   Corrected Memorandum Opinion, entered March 10, 2026 (ECF No. 448);

4.   Order Denying Motion to Alter or Amend Judgment, entered March 10, 2026 (ECF No. 449).

This appeal is taken pursuant to 28 U.S.C. § 158(a) and Federal Rule of Bankruptcy Procedure 8002.

Date: March 10, 2026

Respectfully submitted,

Cynthia Diane Blanchard
414 SE Washington Blvd., Ste. 205
Bartlesville, OK 74006
Phone: 310-435-5707

Creditor / Appellant
Pro Se

21

## Certificate of Service

I certify that on this 10th day of March 2026, a copy of the foregoing Notice of Appeal was filed with the Clerk of the United States Bankruptcy Court for the Northern District of Oklahoma via the Court's CM/ECF system, which provides notice to all registered parties.

Cynthia Diane Blanchard
414 SE Washington Blvd., Ste. 205
Bartlesville, OK 74006
Phone: 310-435-5707

Creditor / Appellant
Pro Se

22

**Attachment and Instructions for**
**Order Setting Hearing**

**Judge Paul R. Thomas**

<u>IT IS FURTHER ORDERED THAT MOVANT IS RESPONSIBLE FOR GIVING NOTICE OF THIS HEARING TO ALL PARTIES IN INTEREST AS REQUIRED BY RULE OR STATUTE.  ADDITIONAL NOTICE NEED·NOT BE GIVEN TO PARTIES IN INTEREST WHO HAVE RECEIVED THIS NOTICE ELECTRONICALLY.</u>

IT IS FURTHER ORDERED that counsel should be prepared to submit whatever evidence they deem necessary for the Court's full consideration and determination of the matters set  forth above.   Bankr. N.D. Okla. Local Rule 9070-1 applies to these proceedings.

IT IS FURTHER ORDERED that all exhibits to be offered shall be marked prior to the hearing.  When an exhibit is comprised of multiple pages, each page shall be separately marked (e.g., Exhibit 1-1, 1-2, etc.).  Movant's exhibits shall be sequentially numbered beginning with the number 1. Respondent's exhibits shall be sequentially numbered  beginning with the number 100. Failure to abide by these requirements may result in denial of the admission of the exhibit.

IT IS FURTHER ORDERED that the above-referenced hearing may be continued from time to time without further notice other than an announcement of the continued date at the originally scheduled time.  Requests for continuance must comply with Bankr. N.D. Okla. Local Rule 9006-1(B).

23

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OKLAHOMA



IN RE:

GREEN COPPER HOLDINGS, LLC,

Debtor,

COPPER TREE, INC.

Debtor,

THE INN AT PRICE TOWER INC.

Debtor.

Filed/Docketed
Jan 16, 2026

Case No. 25-10088-T
Chapter 7

Substantively consolidated with
Case No. 25-10084-T

ORDER SETTING EVIDENTIARY HEARING BY VIDEO CONFERENCE
AND ESTABLISHING RELATED DEADLINES

THIS ORDER relates to 1) Renewed Motion for Protective Order filed by Cynthia Diane Blanchard ("Blanchard"), at Docket No. 284; Objection by Pictoria Studios USA Inc and Taktik Enterprises, Inc.; Reply by Blanchard; Request for Hearing filed by Pictoria Studios USA Inc and Taktik Enterprises, Inc.; 2) Motion for Protective Order filed by Blanchard, at Docket No. 338; Response by Pictoria Studios USA Inc and Taktik Enterprises, Inc.; Request for Hearing filed by Pictoria Studios USA Inc.; 3) Motion to Revoke Pro Hac Vice Admission of Craig Brand filed by Blanchard, at Docket No. 341; Response by Craig Brand; 4) Motion to Quash Unauthorized and Untimely Interrogatories Served by Attorney Craig Brand on Behalf of Taktik Enterprises, Inc filed by Blanchard at Docket No. 368; Response by Taktik Enterprises, Inc; 5) FED.R.BANKR.P.9024 Motion to Vacate Certain Orders Entered During Period of Procedural Irregularities, Lack of Required Oversight, and Unauthorized Filings Affecting Creditor Rights filed by Blanchard, at Docket No. 384; Response by Pictoria Studios, Taktik Enterprises and

24

Attorney Craig Brand; Objection by Trustee. The Court has determined that an evidentiary hearing is required. Being fully advised in the premises, the Court orders as follows:

IT IS HEREBY ORDERED that the evidentiary hearing previously scheduled for January 27, 2026, is hereby continued to **Tuesday, January 27, 2026, at 10:00 AM, Central Daylight Time**. The Court has allocated one-half day for the evidentiary hearing.

To expedite and facilitate the evidentiary hearing in this matter, the COURT FURTHER ORDERS as follows:

1. **SERVICE. The Court will give service of this Order through CM/ECF unless otherwise noted on the docket.** Additional notice need not be given to parties in interest who have received this notice electronically.

2. **VIDEO CONFERENCE.** The evidentiary hearing will take place by video conference using the services of Zoom Video Communications, Inc. ("Zoom"). Participants in the hearing will be connected with the courtroom using these technologies but will not be physically present in the courtroom. The Court will provide a password-protected link for the Zoom video conference to those approved persons who have submitted to the Court a notice of intent to participate in accordance with Paragraph 3 of this Order. All counsel and witnesses shall conduct a pre-hearing test of Zoom using the same equipment that they intend to use during the hearing. *See* Paragraph 8. Parties should refer to the Court's guidelines regarding Zoom Video Conferences, located at https://www.oknb.uscourts.gov/zoom-video-conferences.

3. **PRIOR NOTICE OF INTENT TO PARTICIPATE; LIMIT ON PARTICIPATION BY VIDEO; TELEPHONE PARTICIPATION.** No later than **Thursday, January 22, 2026,** any parties wishing to participate in the hearing shall provide to the courtroom deputy [Stephanie_Boatman@oknb.uscourts.gov] a complete list of all video conference participants, with the participants' email addresses and a telephone number, at which the

2

participant can be reached during the hearing in the event of an interruption in the audio or video feed. The parties are encouraged to limit video conference participation to those who are necessary to the presentation of this contested matter. If the number of persons wishing to participate in the video conference, in the Court's view, exceeds the number that would permit the efficient, stable, and reliable transmission of the evidentiary hearing by video conference, the Court may require that certain persons be permitted to participate in the evidentiary hearing only by telephone. The Court will provide to each person participating by telephone separate dial-in instructions, which may be used with any telephone equipment.

4. **PUBLIC ACCESS.** The evidentiary hearing scheduled by this Order is a public matter. The general public is invited to listen to the hearing by telephone. **No later than 12:00 PM, CDT, Friday, January 23. 2026,** any person wishing to listen to the hearing by telephone may contact Stephanie Boatman by electronic mail at Stephanie_Boatman@oknb.uscourts.gov to obtain dial-in instructions.

5. **ELECTRONIC SUBMISSION OF HEARING EXHIBITS AND WITNESS LISTS.** This Order supersedes Local Rule 9070-1. **No later than Thursday, January 22, 2026,** the parties **shall file with the Court** in the above captioned case: 1) a copy of each exhibit the parties may use at the hearing for any purposes, including for rebuttal or impeachment; and 2) a list of witnesses intended to be called at the hearing, including whether they will be designated as experts. Each parties' exhibits shall be named sequentially as follows, beginning with the number 1: e.g., PARTY_NAME_Ex_1, PARTY_NAME_Ex_2, PARTY_NAME_Ex_3, etc. The exhibit number should be visible at the bottom of each page of the exhibit. When an exhibit is comprised of multiple pages, each page shall be separately marked: e.g., PARTY_NAME_Ex_1-1, PARTY_NAME_Ex_1-2, etc. **Each party and witness participating in the hearing shall take the steps necessary to ensure that all electronic documents have been printed or are**

3

**otherwise readily available during the hearing.** The exhibits so filed shall constitute the official exhibits in this matter.

      6.      **WITNESS TESTIMONY.** Any witness called to testify at the hearing shall testify by contemporaneous transmission from a different location into the courtroom.

      a.   All witnesses shall be placed under oath and their testimony shall have the same effect and be binding upon the witness in the same manner as if such witness was sworn and testified in open court.

      b.   Each witness shall provide their testimony from a quiet room and must situate themselves in such a manner as to be able to both view the video feed and be seen by the Court.

      c.   **While the witness is sworn and testifying:** (i) no person may be present in the room from which the witness is testifying; (ii) the witness may not have in the room any documents except the exhibits submitted by the parties pursuant to Paragraph 5 above [and any declaration submitted in lieu of direct testimony]; and (iii) the witness may not communicate with any other person regarding the subject of their testimony, by electronic means or otherwise. If the witness or their counsel seek to communicate with one another, either shall openly request a recess for such purpose. If such request is granted by the Court, the witness and their counsel may privately confer "offline," i.e., by telephonic means that are not transmitted to the other parties.

      d.   It is counsel's and/or the parties' responsibility to ensure their witnesses possess complete copies of all marked exhibits for the Zoom video conference. **Exhibits will not be displayed during the hearing by the Court.**

4

e. If a witness has documents, other than exhibits, in their possession and control during their testimony, counsel sponsoring the witness must provide a list of such documents to the Court and opposing counsel at the start of the hearing.

f. If any party wishes to sequester a witness for any reason, they must inform the courtroom deputy at the technical pre-hearing conference (*See* Paragraph 8).

7. **COURTROOM FORMALITIES.** Although conducted using telephonic and videoconferencing technologies, the hearing constitutes a court proceeding. **No person shall record—from any location or by any means—the audio or video of the hearing.** The audio recording created and maintained by the Court shall constitute the official record of the hearing. Further, the formalities of a courtroom shall be observed. Counsel and witnesses shall dress appropriately, exercise civility, and otherwise conduct themselves in a manner consistent with the dignity of the Court and its proceedings.

8. **TECHNICAL PRE-HEARING CONFERENCE. On Monday, January 26, 2026, at 1:30 PM, CDT,** the Court will separately hold a technical pre-hearing conference, for the purpose of testing both the telephonic and video conference technologies. **All parties and witnesses must participate in the technical pre-hearing conference.** All participants are admonished not to discuss the substance of the hearing at the technical pre-hearing conference, but instead limit their comments to the functionality of the technology and any procedural matters that relate to the technology. The Court will email each participant an invitation to the pre-hearing conference containing a link to the Zoomgov.com meeting. The email will contain a link for the video conference as well as a meeting number, meeting passcode, and security code. Parties are admonished not to share this information with non-participants to the conference. **The Court**

28

**strongly encourages all participants to read the Court's guidelines for Zoom video conferences on its website in advance of the hearing.** *See* Paragraph 2.

9. <u>CONTINUANCES.</u> The above-referenced hearing may be continued from time to time without further notice other than an announcement of the continued date at the originally scheduled time. Requests for continuance must comply with Bankr. N.D. Okla. Local Rule 9006-1(B).

DATED this 16th day of January, 2026.

BY THE COURT:

_____
PAUL R. THOMAS, CHIEF JUDGE
UNITED STATES BANKRUPTCY

6

29

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| GREEN COPPER HOLDINGS, LLC | ) | CASE NO. 25-10088-T |
| EIN # xx-xxx9708 | ) | Chapter 7 |
| | ) | |
| COPPER TREE, INC. | ) | Substantively Consolidated |
| EIN # xx-xxx6608 | ) | |
| | ) | |
| THE INN AT PRICE TOWER INC. | ) | |
| | ) | |
| Debtors. | ) | |

**TRUSTEE'S BRIEF IN SUPPORT OF _TRUSTEE'S OBJECTION TO (i) CLAIM NO. 2-2 FILED IN COPPER TREE INC. AND (ii) CLAIM NO. 1-2 FILED IN GREEN COPPER HOLDINGS LLC BY CYNTHIA DIANE BLANCHARD ("CYNTHIA") IN THE AMOUNT OF $269,554.69 AND $285,107.88 RESPECTIVELY WITH NOTICE OF OPPORTUNITY FOR HEARING_**

## I. PRELIMINARY STATEMENT

It should be noted at the outset that the claims asserted by Cynthia are somewhat confusing—largely as a result of her filing claims for different amounts in both Green Copper Holdings LLC and Copper Tree Inc. However, given the substantive consolidation of these entities, the Trustee believes that the operative claim is claim 1-2 filed in Green Copper Holdings, LLC for the sum of $285,107.88.

Given the substantive consolidation of the specified entities, the Trustee shall hereinafter refer to all of the entities as the Debtor.

Cynthia's claim is based on alleged advances of monies by her to the Debtor after the Debtor had acquired the iconic center piece of these proceedings—the Price Tower in Bartlesville, Oklahoma. At the time of the acquisition, it was clear the Price Tower was incapable of standing on its own and the continued operations required the input of substantial capital. It is undisputed

_30_

that at all times relevant Cynthia owned 90% of the Debtor and was the President/CEO of the Debtor. See Statement of Financial Affairs Doc. 1 page 35. At no time prior to or after the acquisition did either Cynthia or any of the shareholders contribute any capital. Moreover, neither Cynthia nor her fellow shareholders were able to obtain any financing from alternative sources. This Debtor was not merely "thinly capitalized"—**it had no capital.**

In addition to the lack of any capital, the Debtor's own pre-bankruptcy financial statements did not show any liability to Cynthia and, with some minor exceptions, there were no substantial repayments of the alleged debt prior to bankruptcy. Based on these and other factors recognized by courts throughout the country, including the 10th Circuit, Cynthia's advances must be characterized as "capital contributions" and not "loans."

The Trustee would additionally point out that in his objection he specifically reserved the right to object to Cynthia's allegations relative to the total of any sums advanced. Cynthia has not provided this Court with sufficient evidence to support the actual dates and amounts of advances. In her discovery responses she has referred to an alleged "loan ledger" or "quickbooks." The problem is, there is no underlying support for these conclusory documents—no cancelled checks; no credit card receipts; no wire transfers etc. Apparently, Cynthia does not plan on attending the hearing or introducing any evidence at the hearing to support her claim. If that is the case, the record simply does not support the allowance for any alleged sums due.

## II. ARGUMENT

### A. ANY ADVANCES BY CYNTHIA SHOULD BE CHARACTERIZED AS CAPITAL CONTRIBUTIONS AND NOT LOANS.

31

In the matter of *In re Cold Harbor Assocs L.P.* 204 B.R. 904, 915 (Bankr. E.D. Va. 1997), a case relied on by the court in *Farr v. Phase Molecular Toxicology Inc. (In re Phase-I Molecular Toxicology Inc.)* 287 B.R. 571 (Bankr. D. New Mexico 2002), the court stated:

"The Court is not required to accept the label of 'debt' or 'equity' placed by the debtor upon a particular transaction but must inquire into the actual nature of a transaction to determine how best to characterize it." (Citations omitted)

Continuing, the court stated:

"The primary factor this Court is to consider when evaluating whether funds advanced by a shareholder are the result of an equity contribution or a loan is whether the transaction bears the earmarks of an arms length transaction." (Citations omitted.)

The court went on to discuss 13 separate criteria courts rely on when analyzing debt v. capital:

1. the names given to the certificates evidencing the indebtedness;
2. the presence or absence of a fixed maturity date;
3. the source of payments;
4. the right to enforce payment of principal and interest;
5. participation in management flowing as a result;
6. the status of the contribution in relation to regular corporate creditors;
7. the intent of the parties;
8. thin or inadequate capitalization;
9. identity of interests between creditor and stockholder;
10. source of interest payments;
11. the ability of the corporation to obtain loans from outside lending institutions;
12. the extent to which the advance was used to acquire capital assets; and
13. the failure of the debtor to repay on the due date or to seek postponement.

The court in *Cold Harbor* also noted that the Sixth Circuit added consideration of whether or not there was security for the alleged "loan". *See Roth Streel Tube Company v. Commissioner of Internal Revenue* 800 F.2d 625, 630-32 (6ᵗʰ Cir. 1980).

The Trustee would address certain of these criteria as follows:

1. **The name given the alleged indebtedness:** Attached as an exhibit to one Cynthia's proofs of claim is a document entitled *Loan Agreement.* However, the signature page of that

*32*

document is not dated. It is impossible to determine when that document was actually signed. Secondly, and as related to the arm's length analysis, the document is signed by Cynthia as alleged lender on the one hand and as CEO for the borrower Debtor on the other hand. Thirdly, there are no promissory notes signed in connection with any or all of the advances. The lack of a promissory note, in conjunction with a lack of other formalities, may indicate that advances are equities. *See Estate of Mixon v. United States 464 F.2d 394, 403* (5th Cir. 1972).

2. **The presence or absence of a fixed maturity date**—The loan agreement has no fixed maturity date. It is in essence a demand note. The court in *Cold Harbor* 204 B.R. at 915 provided:

> "The more specific and complete the parties are in identifying and codifying the terms of the alleged loan agreement, the more like a loan the transaction appears. By contrast, if the terms of such an agreement are vague and non-specific, **such transaction appears more like a shareholder contributing capital to keep his investment afloat.**" (emphasis added)

Continuing on 917:

> "The basic question asked when addressing these factors is: how definite were the plans for repayment. If the terms were vague and nonspecific, then the advance takes on the appearance of equity as it is assumed that a non-shareholder bargaining at arms length would demand specifics and formalities to protect their investment. **First the absence of a fixed maturity date indicates that advances are capital contributions and not loans.** *Roth Steel Tube* 800 F.2d at 631; *Lane v. United States* 742 F. 2d 1311 (11th Cir. 1984).'(emphasis added)

Not only is there no fixed maturity date, the so-called loan limits are vague and imprecise.

Section 1.1 entitled Loan Amount provides, in part:

> "The total outstanding principal shall not exceed an aggregate amount determined and recorded in the parties' bookkeeping software, reconciled with the parties' bank account records."

*33*

It is almost impossible to discern what this language means. In essence, Cynthia, wearing her hat as CEO of the Debtor subject to all of the duties and responsibilities attendant to that role decided when and how much to borrow from herself –with no fixed maturity date and subject to demand by Cynthia as an individual without regard for fiduciary duties owed by Cynthia as CEO of the Debtor.

3. **Source of payments**—As discussed below, the Debtor had no ability to borrow funds from any other source. The Debtor's ability to repay the alleged debt was tied inextricably to the future success of the business. If the expectation of repayment depends solely on the success of the borrower's business, the transaction has the appearance of a capital contribution. *See In re Autostyle Plastics Inc.* 269 F.3d 726, 751 (6th Cir. 2001).

4. **Right to enforce principal and interest**—The alleged loan agreement fails to provide for payment of any interest prior to the demand for repayment by Cynthia. In *Cold Harbor* 204 B.R. at 918, the court stated:

"Although there is a defined rate of interest on the face of the notes, no provisions have been made for the payment of interest payments prior to a demand for repayment in full by a shareholder. An open ended repayment term such as this tends to demonstrate that the advances in question bear the earmarks of an equity contribution."

Continuing:

"This Court finds that formalities evidencing a method of repayment to be either nonexistent, or so vague as to be nonexistent. Any advance made for such little return on a risky investment was not made on an arm's length basis and does not bear the earmarks of a loan."

5. **Presence or absence of security**—As noted, the alleged debt was wholly unsecured. Lack of security for a transaction is considered to be a significant indicator that an advance is not a loan. *See Roth Steel Tube* 800 F.2d 625, 631 (6th Cir. 1986).

34

6. **Intent of the parties**—Trustee's Exhibit 4 represents a list of the Debtor's liabilities as of March 2024 prepared by the Debtor's accountant and provided to both Cynthia and Donna Keffer, an executive director of the Debtor. It represents a corporate document maintained in the normal course of business and will be authenticated by Ms. Keffer at the hearing. Cynthia's alleged debt is not reflected in the document. At no time prior to the commencement of these proceedings did Cynthia demand payment from the Debtor of the alleged sums due. With minor exceptions, the Debtor made no substantial repayment of debt. As already noted, there were no provisions for the payment of interest and no interest payments made. The parties never intended for these advances to be treated as debt. Cynthia's advances were intended to preserve her investment—however undercapitalized it was.

7. **Thin or inadequate capitalization**—As already noted, this Debtor from its inception was not merely "thinly" capitalized"—it had no capital. In *Cold Harbor* 204 B.R. at 916, the court noted that "this factor is relevant when a corporation is started by the shareholders with a minimal amount of capital who then make a large loan of money to the newly formed corporation, and thus the relevant time for determining whether capitalization was adequate is generally at the corporation's creation. *See e.g. Hillsborough* 176 Bankr. At 249." It is undisputed that this Debtor had no capital from its inception and the alleged 'loans" were effected to keep the undercapitalized "investment" afloat. What is particularly egregious about this case is Cynthia knew and understood from the onset the operations of the Price Tower would not succeed absent substantial capital contributions.

35

8. **Identity of interest between creditor and stockholder**—In *Cold Harbor* 204 B.R. at 918-919, the court provided:

"The final factor to be considered is the relationship between those owning equity and making the advance. **The Court considers this to be the most critical factor in its determination due to** the exact identity between the two groups. The purported loan was made on a pro rata basis with each partner contributing a percentage of the entire advance exactly equal to his or her equity interest in the partnership." (Emphasis added.)

Cynthia owned **90% of the Debtor**. She had and exercised total control over the Debtor.

There was for all practical purposes a 100% relationship between lender and shareholder.

9. **Ability of Debtor to obtain loans from outside lending institutions**—Cynthia's discovery responses establish conclusively that despite numerous efforts this Debtor was unable to obtain "loans" from any outside lender. Equally important is the fact that no lender would even consider a loan based on the terms and conditions applicable to Cynthia's alleged loans. In *Cold Harbor* 204 B.R. at 918, the court stated:

"The question to be asked here is whether a reasonable outside creditor would have made a loan to the debtor on similar terms. *Roth Steel Tube* 800 F.2d. at 631. This Court does not hesitate to hold that the answer to this question is an unequivocal "no."

The court in *Cold Harbor* 204 B.R. at 915 stated:

"The list of factors is not exclusive and no one factor is predominant, nor are the factors to be given rigidly equal weight. Instead the Court is to apply these factors to the particular case at hand keeping in mind the specific circumstances surrounding the present factual situation."

Almost all of the specified factors under the facts of this case support characterizing Cynthia's advances as capital contributions effected by Cynthia in an attempt to save her "investment." The Trustee would ask this Court to take judicial notice of the prior orders entered in this case approving claims filed for sums in excess of $ 1 million—debt incurred

*36*

under Cynthia's watch in her desperate attempt to operate a grossly undercapitalized Debtor for her own benefit.

## B.  Cynthia Has failed To Establish The Total Sums Advanced

In support her claims, Cynthia merely attached as an exhibit an alleged "loan ledger." It was attached to Claim 1-1. The document is a conclusory "summary" which provides no supporting documents of any kind. In *Thompson v. Short (In re Short)* 669 B.R. 81, 93 (Bankr. Utah 2025), provides the following discussion:

"Bankruptcy Rule 3001(f) provides that a 'proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim. However, for a proof of claim to be accorded that evidentiary presumption, it must meet certain requirements, including attaching supporting documentation, proof of a perfected security interest and an itemization of accrued interest."

Continuing:

"However, when a party fails to attach supporting documentation to a claim, the burden more readily shifts to the creditor who then bears the obligation of persuasion to establish the enforceability, amount, and perfection of an asserted secured claim. "

The Trustee asserts that Cynthia failed to attach to her proof of claim or frankly otherwise produce in these proceedings any documents to support the alleged advances. The problems related to this claim are heightened given Cynthia's insider status. The court in *Thompson v. Short (In re Short)* 699 B.R. at 93 also stated:

"While insider claims are entitled to the presumption of allowance under Bankruptcy Rule 3001(f) the Supreme Court holds that such claims are need not be accorded 'pari passu treatment with the claims of other creditors' and that their disallowance 'may be necessitated by certain cardinal principles of equity jurisprudence.' Thus when an insider claim is challenged, its allowance is 'subject to rigorous scrutiny.' And the burden is on the insider to 'not only prove the good faith of the transaction but also to show the inherent fairness from the view point of the' debtor and other parties in interest. 'The essence of the test is whether or not under all the circumstances the transaction carries the earmarks of an arms length bargain. If it does not equity will set it aside.' "

Cynthia's claim based on alleged loans simply does not stand up under any rigorous analysis —leaving aside the capital characterization issue discussed above. There are no earmarks of an arm's length transaction and she has provided no underlying supporting documents of any kind.

## III. CONCLUSION

To the extent Cynthia is able to establish actual advances by her to the Debtor, those advances should be characterized as capital contributions for the reasons stated herein. Her claim as a general unsecured claim should be denied in its entirety.

Moreover, Cynthia failed to attach sufficient supporting documents to her proofs of claim and under the rigorous scrutiny required of insider claims the transaction doe not bear the earmarks of an arm's length and good faith transaction. As a result, the claims should be denied.

Respectfully Submitted by:

/s/ Patrick J. Malloy III
Patrick J. Malloy III, OBA #5647
MALLOY LAW FIRM, P.C.
401 S. Boston Ave. Suite 500
Tulsa, Oklahoma 74103
Telephone:     918-699-0345
Fax:               918-699-0325
Email:           pjmiiim@sbcglobal.net
*ATTORNEYS FOR TRUSTEE*

38

DOC010926-01 ... 26104105.pd( Open with Google Docs )

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OKLAHOMA

## CHIEF JUDGE PAUL R THOMAS

## WITNESS LIST

DATE OF HEARING: ____January 12, 2026 at 9:00 a.m._____

IN RE: _GREEN COPPER HOLDINGS, LLC and THE INN AT PRICE TOWER INC._____

CASE NO. __25-10088-T_____          ADVERSARY NO. _____

**MATTER: TRUSTEE'S OBJECTION TO (i) CLAIM NO. 2-2 FILED IN COPPER TREE INC., AND (ii) CLAIM NO. 1-2 FILED IN GREEN COPPER HOLDINGS, LLC, BY CYNTHIA DIANE BLANCHARD ("CYNTHIA") IN THE AMOUNT OF $269,554.69 AND $285,107.88 RESPECTIVELY, WITH NOTICE OF OPPORTUNITY FOR HEARING**

WITNESSES OF:___Patrick J. Malloy III, Chapter 7 Trustee_____

**WITNESSES EXPECTED TO BE PRESENT AND WHO MAY BE CALLED TO TESTIFY:**

| NAME | ADDRESS / TELEPHONE | SUMMARY OF TESTIMONY |
|---|---|---|
| Donna Keffer | 1608 Cherokee Hills Drive Bartlesville, OK 74006 | |
| Patrick J. Malloy, Trustee | 401 S. Boston Ave. Suite 500 Tulsa, Oklahoma 74103 Telephone: 918-699-0345 | |

**DESIGNATION OF WITNESSES WHOSE TESTIMONY MAY BE PRESENTED BY MEANS OF A DEPOSITION:**

| NAME | ADDRESS / TELEPHONE | SUMMARY OF TESTIMONY |
|---|---|---|
| N/A | | |

Page 1 / 1

39

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| IN RE: | ) |
| | ) |
| GREEN COPPER HOLDINGS, LLC | )    **CASE NO. 25-10088-T** |
| EIN # xx-xxx9708 | )    **Chapter 7** |
| | ) |
| COPPER TREE, INC. | )    **Substantively Consolidated** |
| EIN # xx-xxx6608 | ) |
| | ) |
| THE INN AT PRICE TOWER INC. | ) |
| | ) |
| Debtors. | ) |

**EHXIBIT LIST re: TRUSTEE'S OBJECTION TO (i) CLAIM NO. 2-2 FILED IN COPPER TREE INC., AND (ii) CLAIM NO. 1-2 FILED IN GREEN COPPER HOLDINGS, LLC, BY CYNTHIA DIANE BLANCHARD ("CYNTHIA") IN THE AMOUNT OF $269,554.69 AND $285,107.88 RESPECTIVELY, WITH NOTICE OF OPPORTUNITY FOR HEARING**

| Exhibit No. | DOCUMENT TITLE | Admitted/Denied |
|---|---|---|
| Ex 1 | Claim No. 1-2 in Green Copper Holdings, LLC et al (case #25-10088-T) filed by Cynthia Diane Blanchard | |
| Ex 2 | NOTICE OF FILING PREVIOUSLY-PRODUCED DISCOVERY IN SUPPORT OF CLAIMANT'S DESIGNATION OF RECORD (Doc. No. 396) | |
| Ex 3 | January 7, 2026 Email with Updated Debt Schedule Attached | |
| Ex 4 | Price Tower Itemized List of Debt Owed as of March 6, 2024 | |
| Ex 5 | Loan Ledger attached to Claim No. 1-1 in Green Copper Holdings, LLC et al (case #25-10088-T) filed by Cynthia Diane Blanchard | |

Respectfully Submitted By:

/s/ Patrick J. Malloy III
Patrick J. Malloy III, OBA #5647
MALLOY LAW FIRM, P.C.
401 S. Boston Ave. Suite 500
Tulsa, Oklahoma 74103
Telephone:    918-699-0345
Fax:             918-699-0325
*ATTORNEYS FOR TRUSTEE*

*40*

510 South Dewey Ave /// Bartlesville, OK 74003
O > 918.336.1000  C > 918.409.7006 /// pricetower.org

-----Original Message-----
From: Renee Nichols <rnichols@thepricetower.com>
Sent: Wednesday, March 6, 2024 4:25 PM
To: 'Cynthia Blanchard' <cynthia@thepricetower.com>
Cc: Donna Keffer <dkeffer@thepricetower.com>
Subject: Re: Updated Debt Schedule Attached

So sorry ... I sent wrong attachment.  Here is the latest.

On 3/6/2024 4:21 PM, Renee Nichols wrote:
> Please review and let me know if you would like to discuss.
>
> Renee

3-2

41

# Price Tower
## Itemized List of Debt Owed
### All Dates as of Mar 6, 2024

| Vendors | Total |
|---|---:|
| Artisan Fine Wine and Spirits | 338.00 |
| Cherokee Fire Protection | 10,377.56 |
| City of Bartlesville | 11,910.23 |
| CL Partners, LLC | 8,875.20 |
| Commtrak Corp | 257.50 |
| Donna Keffer | 6,439.78 |
| Expedia Group | 1,009.08 |
| Farris Heat and Air | 350.00 |
| Glenn Security Systems Inc | 246.00 |
| Green Country Tourism | 150.00 |
| Helm Ventures | 2,162.12 |
| Holtz Electric, Inc. | 3,078.68 |
| Inktown Design, LLC | 1,205.45 |
| John Marcott | 525.90 |
| John Lindbloom - Artist Fees | 21,842.10 |
| KWON Radio | 880.48 |
| Nonprofit Solutions, P.C. | 162.50 |
| Oklahoma State Department of Health | 610.00 |
| Onyx CenterSource | 62.00 |
| Paul Aubert - Legal | 10,000.00 |
| Price Tower Arts Center (PTAC) | 3,723.40 |
| Public Service Company (PSO) | 26,917.72 |
| R.E.P. Enterprises | 628.07 |
| R.K. Black, Inc. | 1,353.42 |
| Runners Licensing Inc | 664.25 |
| Schindler Elevator Corporation | 20,055.92 |
| Sherwood,McCormick and Robert | 4,307.47 |
| Spectrum Paint | 262.36 |
| Sysco | 7.32 |
| Trane USA Inc | 779.10 |
| Washington County Treasurer | 1,024.00 |
| **Total Vendors** | **$ 140,205.61** |

| Deferred Salaries and Contract Payments (Through March 6, 2024) | Total |
|---|---:|
| Renee Nichols | 111,000.00 |
| Donna Keffer | 19,548.28 |
| Paul Aubert | 80,000.00 |
| Linda Jones | 33,000.00 |
| Josh Gunter | 4,500.00 |
| **Total Salaries and Contract Labor** | **$ 248,048.28** |

<u>**EXHIBIT 4**</u>

42

4-1

| Loans | Total |
|---|---|
| Nathan | 12,000.00 |
| Linda Jones | 4,200.00 |
| Mark Haskell | 166,578.59 |
| Hans Schmoldt | 10,000.00 |
| Donna Keffer | 2,000.00 |
| Joe Hassan | 7,906.52 |
| Dallas Hindman | 9,700.00 |
| Mark Haskell - Truity Loan | 589,441.20 |
| Enterprise Global Logistics | 60,000.00 |
| **Total Loans Payable** | **$ 861,826.31** |

| Disputed Liabilities | Total |
|---|---|
| Pictoria Studios - Mike Moran | 58,500.00 |
| TakTik Enterprises & Subsidiaries - Dale Takio | 182,802.01 |
| Historic Hotels | 14,328.47 |
| **Total Disputed Invoices** | **$ 255,630.48** |

| | |
|---|---|
| **Grand Total Liability** | **$ 1,505,710.68** |
| Disputed Invoices | 255,630.48 |

43

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

In re:
**Green Copper Holdings, LLC;**
**Copper Tree, Inc.; and**
**Inn at Price Tower, Inc.**
**Substantively Consolidated Debtors.**      **Case No. 25-10088.**   Chapter 7

## CLAIMANT'S MOTION TO STRIKE TRUSTEE'S LATE-FILED WITNESS LIST AND UNDISCLOSED EXHIBIT, AND OBJECTION TO EXPANSION OF THE RECORD

Cynthia Diane Blanchard ("Claimant"), appearing pro se, hereby moves the Court to strike the

Trustee's late-filed Witness List and attempted introduction of an undisclosed exhibit filed and/

or transmitted on January 9, 2026, and in support states as follows:

## I. INTRODUCTION

This matter is set for hearing on January 12, 2026 on the Trustee's objection to Claimant's proof

of claim. Discovery has closed, briefing has been completed, and the matter is noticed for

hearing on the existing record.

On January 9, 2026, one business day before the hearing, the Trustee filed and/or transmitted (i)

a Witness List identifying witnesses not previously disclosed and (ii) an 'additional exhibit' that

was not included in the Trustee's filed exhibit list and was not produced during discovery.

This late disclosure violates basic principles of notice, fairness, and due process, particularly

where Claimant is proceeding pro se.

## II. FACTUAL BACKGROUND

44

The Trustee filed his objection to Claimant's proof of claim and supporting briefing in advance of the scheduled hearing.

Discovery has concluded, and no scheduling order or court directive authorizes the late supplementation of witnesses or exhibits on the eve of the hearing.

On January 9, 2026—only one business day before the scheduled hearing—the Trustee filed and/ or transmitted a Witness List and an "additional exhibit" that had not been previously disclosed and were not produced during discovery.

The Trustee did not seek leave of Court to supplement his witness or exhibit disclosures and did not assert or demonstrate good cause for the late disclosure.

## III. ARGUMENT

### A. The Late-Filed Witness List and Exhibit Violate Fundamental Due Process

A party may not introduce new witnesses or evidence on the eve of a hearing where the opposing party has had no meaningful opportunity to prepare, investigate, or respond. This is particularly true where the opposing party is **pro se** and where the late disclosure would effectively expand the scope of the noticed hearing.

Allowing the Trustee to proceed with undisclosed witnesses or exhibits would deprive Claimant of the ability to:

- Prepare cross-examination;

- Investigate or challenge the proffered evidence;

45

- Present rebuttal evidence; or

- Seek appropriate discovery.

**B. The Trustee Has Not Shown Good Cause for Late Disclosure**

The Trustee has not moved for leave to supplement the record, nor has he articulated any justification for failing to disclose these witnesses or exhibits during discovery or in his filed exhibit list. Absent a showing of good cause, late-disclosed evidence should be excluded.

**C. The Trustee's Filing Improperly Expands the Scope of the Hearing**

The January 12, 2026 hearing is on the Trustee's objection to Claimant's proof of claim—not a trial on newly introduced testimony or evidence. Permitting late-disclosed witnesses or exhibits would improperly transform a noticed claims hearing into a surprise evidentiary proceeding.

Such expansion would be fundamentally unfair and inconsistent with the orderly administration of claims objections.

## IV. RELIEF REQUESTED

WHEREFORE, Claimant respectfully requests that the Court:

1. Strike the Trustee's late-filed Witness List in its entirety;

2. Exclude any exhibits or evidence not timely disclosed or produced during discovery, including the Trustee's late-disclosed "additional exhibit";

*46*

3. Limit the January 12, 2026 hearing to the existing record and properly disclosed exhibits; and

4. Grant such other and further relief as the Court deems just and proper.

**Date:** January 9, 2026

Respectfully submitted,

Cynthia Diane Blanchard, Pro Se Claimant
414 SE Washington Blvd., Suite 205
Bartlesville, OK 74006
Telephone: (310) 435-5707

47

## CERTIFICATE OF SERVICE

I hereby certify that on January 9, 2026, a true and correct copy of the foregoing Claimant's Motion to Strike Trustee's Late-Filed Witness List and Undisclosed Exhibit, and Objection to Expansion of the Record was served by electronic filing via the Court's CM/ECF system, which provides notice to all counsel of record, including:

**Patrick J. Malloy III**
Attorney for Chapter 7 Trustee
Malloy Law Firm, P.C.
401 S. Boston Avenue, Suite 500
Tulsa, Oklahoma 74103


Respectfully submitted,

Cynthia Diane Blanchard, Pro Se Claimant
414 SE Washington Blvd., Suite 205
Bartlesville, OK 74006
Telephone: (310) 435-5707

48

01/09/2026   403

ORDER DENYING MOTION TO STRIKE. THIS MATTER comes before the Court pursuant to Claimant's Motion to Strike Trustee's Late-Filed Witness List and Undisclosed Exhibit, and Objection to Expansion of the Record (the "Motion"), filed by Cynthia Diane Blanchard ("Blanchard"), at ECF No. 402. In the Motion, Blanchard asks the Court to strike a witness list and exhibit transmitted to the Court by Patrick J. Malloy, the trustee in this case, on Friday, January 9, 2026, one business day before a hearing scheduled in this case on Monday, January 12, 2026. Okla. N.D. Bankr. Local Rule 9070-1 states that if a hearing is scheduled on a Monday, witness lists and pre-marked exhibits shall be submitted to, but not filed, with the Clerk of Court no later than 12:00 p.m. on the immediately preceding Friday. The Court finds that the witness list and exhibits were timely delivered to the Court by Malloy. In addition, Blachard appears to make a substantive objection to the admission of an "additional exhibit," that is not otherwise identified. The Court finds Blanchard has not stated sufficient grounds to deny admission of any exhibit, and will therefore overrule the objection. Blanchard is free to appear and lodge any objections to evidence presented at the January 12, 2026, Hearing. IT IS THEREFORE ORDERED that the Claimant's Motion to Strike Trustee's Late-Filed Witness List And Undisclosed Exhibit, and Objection To Expansion of the Record, filed by Cynthia Diane Blanchard, at ECF No. 402, is DENIED. IT IS FURTHER ORDERED that the Court will reserve ruling on the admissibility of evidence introduced by either party until the January 12, 2026, Hearing. BY THE COURT: Judge Paul R. Thomas. *This entry is the Official Order of the Court. No document is attached.* (RE: related document(s)402 Motion to Strike Document). CERTIFICATE OF SERVICE to Cynthia Diane Blanchard, 414 SE Washington Blvd. Ste. 205, Bartlesville, OK 74006 (CR)

49

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

In re:
**Green Copper Holdings, LLC;
Copper Tree, Inc.; and
Inn at Price Tower, Inc.,
Substantively Consolidated Debtors.**

**Case No. 25-10088
Chapter 7**

### NOTICE OF NON-APPEARANCE AND CONTINUING OBJECTION

Claimant Cynthia Diane Blanchard hereby provides notice that she will not appear at the hearing

scheduled for January 12, 2026, due to safety concerns.

Claimant expressly objects to the admission or reliance on any previously undisclosed witness

testimony or previously undisclosed evidence offered at the hearing, on due-process grounds,

including lack of notice and lack of any meaningful opportunity to prepare or respond.

Claimant rests on the docket.

Date: January 12, 2026

Respectfully submitted,

Cynthia Diane Blanchard
Pro Se Claimant
414 SE Washington Blvd., Suite 205
Bartlesville, OK 74006
Telephone: (310) 435-5707

## CERTIFICATE OF SERVICE

I hereby certify that on January 12, 2026, a true and correct copy of the foregoing Claimant's Notice Of Non-Appearance and Continuing Objection was served by electronic filing via the Court's CM/ECF system, which provides notice to all counsel of record, including:

**Patrick J. Malloy III**
Attorney for Chapter 7 Trustee
Malloy Law Firm, P.C.
401 S. Boston Avenue, Suite 500
Tulsa, Oklahoma 74103

Respectfully submitted,

Cynthia Diane Blanchard, Pro Se Claimant
414 SE Washington Blvd., Suite 205
Bartlesville, OK 74006
Telephone: (310) 435-5707

| 01/12/2026 | | 405 |
|---|---|---|

MINUTE: Hearing held on 1/12/2026. Evidence received. Matter taken under advisement. (RE: related document(s)144 Objection to Claim, 202 Generic Event., 381 Order Setting Hearing). (CR)

52

| 01/12/2026 | | 406 |
| --- | --- | --- |

CORRECTED MINUTE: Hearing held on 1/12/2026. Evidence received. For reasons stated on the record, the Objection filed by Cynthia Diane Blanchard, at ECF No. 404 is overruled. Matter taken under advisement. (RE: related document(s)144 Objection to Claim, 202 Generic Event., 381 Order Setting Hearing, 404 Generic Event., 405 Hearing held). CERTIFICATE OF SERVICE to Cynthia Diane Blanchard, 414 SE Washington Blvd. Ste. 205, Bartlesville, OK 74006. (CR)

53

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

In re:
**Green Copper Holdings, LLC;
Copper Tree, Inc.; and
Inn at Price Tower, Inc.,
Substantively Consolidated Debtors.**     **Case No. 25-10088.   Chapter 7**

## CLAIMANT'S DESIGNATION OF RECORD AND NOTICE OF NON-APPEARANCE REGARDING JANUARY 12, 2026 CLAIM HEARING

Claimant Cynthia Diane Blanchard, appearing pro se, submits this Designation of Record and

Notice of Non-Appearance pursuant to the Court's Hearing Order entered December 3, 2025

(Doc. 381), and Bankr. N.D. Okla. Local Rule 9070-1, regarding the hearing scheduled for

January 12, 2026 on the Trustee's objection to Claimant's proof of claim.

### 1. Resting on the Docket

Claimant continues to rest on the docket and does not intend to present live testimony. Claimant

respectfully requests that the Court rule on the Trustee's objection to her claim as a matter of law

based on the existing written record.

### 2. Designation of Evidence

For purposes of the January 12, 2026 hearing, Claimant designates the following as the entirety

of the evidence upon which she relies:

a. Proof of Claim No. 1-2 and all attachments and supporting documentation filed therewith, and

b. The existing record in this bankruptcy case.

### 3. No Witnesses

54

Claimant does not intend to call any witnesses and will rely solely on the documentary record already before the Court.

**4. Reliance on Closed Discovery Record**

Claimant relies on the closed discovery record and the materials already filed on the docket in connection with the Trustee's objection to her claim.

**5. Notice of Non-Appearance / Safety**

Claimant will not appear in person or remotely at the January 12, 2026 hearing due to safety concerns previously made known to the Court and the Trustee. Claimant rests on the docket and respectfully requests that the Court rule on the Trustee's objection based solely on the existing written record. Claimant does not waive any rights by non-appearance.

This filing is submitted solely to comply with the Court's Hearing Orders and applicable local rules.

Date:   December 16, 2025

Respectfully submitted,

Cynthia Diane Blanchard
Claimant, Pro Se
414 SE Washington Blvd. Ste. 205.
Bartlesville Ok, 74006.
PH: 310-435-5707

## CERTIFICATE OF SERVICE

I hereby certify that on December 16, 2025, a true and correct copy of the foregoing Claimant's Designation of Record and Notice of Non-Appearance Regarding January 12, 2026 Claim Hearing was filed with the Clerk of the United States Bankruptcy Court for the Northern District of Oklahoma, and that service will be accomplished by the Clerk's office through the Court's CM/ECF system upon all parties entitled to notice, including the Chapter 7 Trustee and counsel of record.

Date:  December 16, 2025

**Cynthia Diane Blanchard**
Claimant, Pro Se
414 SE Washington Blvd., Ste. 205
Bartlesville, OK 74006
Phone: (310) 435-5707

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

IN RE:
GREEN COPPER HOLDINGS, LLC
COPPER TREE, INC.
THE INN AT PRICE TOWER, INC.

Case No. 25-10088-T (Consolidated).  Chapter 7

MOTION TO SUPPLEMENT THE RECORD ON APPEAL

COMES NOW Cynthia Diane Blanchard, creditor and claimant, appearing **pro se**, and

respectfully moves the Court for entry of an order permitting supplementation of the record for

purposes of appeal, and states as follows:

**1. Procedural Background**

1.   On February 27, 2026, the Court entered an Order Sustaining Objection and Disallowing

Claims (ECF No. 433).

2.   On March 10, 2026, the Court entered an Order Denying Motion to Alter or Amend

Judgment (ECF No. 449).

3.   On March 10, 2026, Claimant filed a Notice of Appeal to the United States District Court

for the Northern District of Oklahoma.

4.   Claimant now respectfully moves to supplement the appellate record with limited

documentary evidence that clarifies two factual issues referenced in the Court's

Memorandum Opinion.

57

## 2. Purpose of the Supplement

5.   This motion is not intended to relitigate the merits of the Court's ruling.

6.   Rather, Claimant seeks to ensure that the appellate court has access to documentation directly relevant to:

- contemporaneous financial records documenting the loan at issue, and

- documented communications regarding Claimant's personal safety concerns prior to the claim hearing.

7.   These documents provide additional context for the factual record already before the Court and clarify issues referenced in the Court's Memorandum Opinion.

## 3. Financial Documentation

8.   Attached as Exhibit A is an email dated October 31, 2023 from Donna Keffer forwarding an earlier October 25, 2023 email from company accountant Renee Nichols transmitting the September 2023 Consolidated Balance Sheet for the Price Tower entities. The original October 25, 2023 email reflects that the balance sheet was transmitted by accountant Renee Nichols to Claimant and copied to Donna Keffer in her role as Executive Director. The balance sheet reflects long-term liabilities owed to Claimant recorded under account 28100 – Loans from Cynthia Blanchard, consistent with the loan asserted in Claim No. 1-2.

9.   Attached as Exhibit B is the September 2023 Consolidated Balance Sheet referenced in that email.

58

10. The balance sheet reflects the existence of long-term liabilities owed to Claimant consistent with the loan described in Claim No. 1-2.

### 4. Safety Communications Prior to Hearing

11. Attached as Exhibit C is Claimant's August 7, 2025 email to the Chapter 7 Trustee and counsel explaining her personal safety concerns related to an individual who had previously been arrested for stalking and felony computer crimes (with redactions noted on the cover page).

12. In that communication, Claimant explained that due to ongoing threats she could not appear in any public hearing setting.

13. Attached as Exhibit D is the Trustee's August 8, 2025 response referencing a potential contact at the United States Attorney's Office concerning the individual referenced in Claimant's safety concerns.

### 5. Basis for Request

14. Claimant respectfully submits that inclusion of these documents will assist the appellate court in evaluating:

- the contemporaneous financial documentation of the loan, and

- the context surrounding Claimant's decision not to appear in person at the claim hearing.

16. Claimant is proceeding **pro se** and seeks only to ensure that the appellate record accurately reflects the documentary context surrounding these issues.

59

**WHEREFORE**

Claimant respectfully requests that the Court enter an order permitting the above-referenced documents to be included as supplemental materials in the record on appeal. This request is made pursuant to Federal Rule of Bankruptcy Procedure 8009(e), which permits correction or supplementation of the record on appeal.

Date: March 11, 2026

Respectfully submitted,

Cynthia Diane Blanchard
414 SE Washington Blvd., Ste. 205
Bartlesville, OK 74006
Phone: 310-435-5707

Creditor / Appellant
Pro Se

60

**CERTIFICATE OF SERVICE**

I, Cynthia Diane Blanchard, certify that on March 11, 2026, I filed the foregoing Motion to Supplement the Record on Appeal, together with Exhibits A–D, with the Clerk of the United States Bankruptcy Court for the Northern District of Oklahoma.

Notice of this filing will be provided to all registered participants through the Court's CM/ECF electronic filing system.

Cynthia Diane Blanchard
414 SE Washington Blvd., Ste. 205
Bartlesville, OK 74006
Phone: 310-435-5707
Creditor / Appellant
Pro Se

61

# EXHIBIT A

62

 Gmail

Cynthia <cynthiadblanchard@gmail.com>

## Fwd: FW: September 2023 Consolidated Balance Sheet

**Cynthia Blanchard <cynthia@thepricetower.com>**
To: cynthiadblanchard@gmail.com

Fri, Mar 6, 2026 at 10:13 AM

-------- Forwarded Message --------
Subject:FW: September 2023 Consolidated Balance Sheet
   Date:Tue, 31 Oct 2023 12:02:35 -0500
   From:Donna Keffer <dkeffer@thepricetower.com>
       To:'Cynthia Blanchard' <cynthia@thepricetower.com>

Donna Keffer /// Executive Director

510 South Dewey Ave /// Bartlesville, OK 74003
O > 918.336.1000 C > 918.409.7006 /// pricetower.org

-----Original Message-----
From: Renee Nichols <rnichols@thepricetower.com> Sent: Wednesday, October 25, 2023 3:37 PM
To: Cynthia Blanchard <cynthia@herasoft.com>
Cc: Donna Keffer <dkeffer@thepricetower.com>
Subject: September 2023 Consolidated Balance Sheet

I have attached the latest balance sheet requested as well as a copy of the SGP Insurance Binder used as basis for the property value. Please let me know if you need anything else at all.

Renee :-)

**2 attachments**

**22-23 Coverage Proposal - Copper Tree Inc 04.21.23.pdf**
837K

**Consolidated BS - Price Tower - Sep 2023.xlsx**
16K

63

## Consolidated
## Balance Sheet
### As of September 30, 2023

| | IPT | Copper Tree | CT Operations |
|---|---|---|---|
| **ASSETS** | | | |
| Current Assets | | | |
| Bank Accounts | | | |
| 10000 Cash | | | |
| 10012 Truity x1262 - 01 | 25.00 | | |
| 10013 Truity x1262 - 40 | -6,232.51 | | |
| 10014 0001 SAVINGS - 1 | | | 25.00 |
| 10015 0040 CHECKING - 1 | | | 26.93 |
| 10010 Truity x7431 - 01 | | 25.00 | |
| 10011 Truity x7431 - 40 | | 665.16 | |
| 10016 0001 SAVINGS - 1 | | | |
| 10017 0040 CHECKING - 1 | | | |
| 0001 SAVINGS - 1 | | | |
| 0040 CHECKING - 1 | | | |
| 10022 Truity x9278 - 01 (Hotel) | 25.00 | | |
| 10023 Truity x9278-40 (Hotel) | 97.79 | | |
| Total 10000 Cash | -$ 6,084.72 | $ 690.16 | $ 51.93 |
| 10100 Cash on Hand | 555.80 | | |
| 10200 Clearing Account | 0.00 | | |
| Total Bank Accounts | -$ 5,528.92 | $ 690.16 | $ 51.93 |
| Accounts Receivable | | | |
| 12000 Accounts receivable (A/R) | 117.85 | | |
| Total Accounts Receivable | $ 117.85 | | |
| Total Current Assets | -$ 5,411.07 | $ 690.16 | $ 51.93 |
| Fixed Assets | | | |
| Buildings | | | |
| Total Fixed Assets | | | |
| **TOTAL ASSETS** | -$ 5,411.07 | $ 690.16 | $ 51.93 |
| **LIABILITIES AND EQUITY** | | | |
| Liabilities | | | |
| Current Liabilities | | | |
| Accounts Payable | | | |
| 20000 Accounts Payable (A/P) | 99,512.87 | 336,114.88 | |
| Total Accounts Payable | $ 99,512.87 | $ 336,114.88 | $ 0.00 |
| Other Current Liabilities | | | |
| 21000 Customer prepayments | 125.00 | | |
| 24000 Payroll wages and tax to pay | 4,887.07 | | |
| 24400 Gratuities Payable | 0.00 | | |
| 24500 Tips Payable | 0.00 | | |
| Total 24000 Payroll wages and tax to pay | $ 4,887.07 | $ 0.00 | $ 0.00 |
| 25000 Sales tax to pay | | | |
| 25100 Oklahoma Sales Tax | 2,494.41 | | |
| 25120 Washington County Sales Tax | 554.41 | | |
| 25130 Bartlesville Sales Tax | 1,889.74 | | |
| 25300 State Liquor Tax | 1,617.85 | | |
| Total 25000 Sales tax to pay | $ 6,556.41 | $ 0.00 | $ 0.00 |
| 26000 Intercompany Business Loans | | | |

64

| Green Copper | Friends of PT | Consolidated BS |
|---|---|---|
| | | 25.00 |
| | | -6,232.51 |
| | | 25.00 |
| | | 26.93 |
| | | 25.00 |
| | | 665.16 |
| | 25.00 | 25.00 |
| | 760.90 | 760.90 |
| 25.17 | | 25.17 |
| 265.28 | | 265.28 |
| | | 25.00 |
| | | 97.79 |
| $ 290.45 | $ 785.90 | -$ 4,266.28 |
| | | 555.80 |
| | | 0.00 |
| $ 290.45 | $ 785.90 | -$ 3,710.48 |
| 6,787.50 | | 6,905.35 |
| $ 6,787.50 | $ | 6,905.35 |
| $ 7,077.95 | $ 785.90 | $ 3,194.87 |
| $ 14,988,990.00 | $ | 14,988,990.00 |
| $ 14,988,990.00 | | |
| $ 14,996,067.95 | $ 785.90 | $ 14,992,184.87 |
| 153.45 | 1,060.72 | 436,841.92 |
| $ 153.45 | $ 1,060.72 | $ 436,841.92 |
| | | 125.00 |
| | | 4,887.07 |
| | | 0.00 |
| | | 0.00 |
| $ 0.00 | $ 0.00 | $ 4,887.07 |
| | | 2,494.41 |
| | | 554.41 |
| | | 1,889.74 |
| | | 1,617.85 |
| $ 0.00 | $ 0.00 | $ 6,556.41 |

65

| | | | | | |
|---|---:|---|---:|---|---:|
| 26100 Due To / From Green Copper Holdings | 11,646.91 | | -9,155.72 | | |
| 26110 Due To / From Copper Tree Inc | -43,818.49 | | | | 9,362.70 |
| 26200 Due To / From CT Operations | 8,699.86 | | -9,362.70 | | |
| 26400 Due To / From Inn at Price Tower | | | 43,818.49 | | -8,699.86 |
| 26300 Due To / From Friends of Price Tower | -6,951.61 | | -2,408.25 | | |
| Total 26000 Intercompany Business Loans | -$ 30,423.33 | $ | 22,891.82 | $ | 662.84 |
| Customer Prepayments | | | | | |
| 27001 Short-term business loans | 53,649.99 | | 0.00 | | 0.00 |
| Total Other Current Liabilities | $ 34,795.14 | $ | 22,891.82 | $ | 662.84 |
| Total Current Liabilities | $ 134,308.01 | $ | 359,006.70 | $ | 662.84 |
| Long-Term Liabilities | | | | | |
| 28000 Long-term loans | | | | | |
| 28100 Loans from Cynthia Blanchard | 41,201.26 | | 123,238.46 | | 5,826.60 |
| Total 28000 Long-term loans from shareholders | $ 41,201.26 | $ | 123,238.46 | $ | 5,826.60 |
| Total Long-Term Liabilities | $ 41,201.26 | $ | 123,238.46 | $ | 5,826.60 |
| Total Liabilities | $ 175,509.27 | $ | 482,245.16 | $ | 6,489.44 |
| Equity | | | | | |
| 31000 Asset Revaluation Surplus | | | | | |
| 33000 Retained Earnings | -10,000.00 | | -17,500.02 | | |
| Net Income | -170,920.34 | | -464,054.98 | | -6,437.51 |
| Total Equity | -$ 180,920.34 | -$ | 481,555.00 | -$ | 6,437.51 |
| TOTAL LIABILITIES AND EQUITY | -$ 5,411.07 | $ | 690.16 | $ | 51.93 |
| | $ (0.00) | $ | (0.00) | $ | (0.00) |

Friday, Oct 13, 2023 05:39:54 PM GMT-7 - Accrual Basis

66

| | | | | | |
|---|---|---|---|---|---|
| | | -2,511.00 | | -19.81 | |
| 9,155.72 | | 2,408.25 | | -22,891.82 | |
| | | | | -662.84 | |
| -11,646.91 | | 6,951.61 | | 30,423.33 | |
| 2,511.00 | | | | -6,848.86 | |
| $ | 19.81 | $ | 6,848.86 | $ | 0.00 |
| -$ | 100.00 | | | -$ | 100.00 |
| | 0.00 | | 0.00 | | 53,649.99 |
| -$ | 80.19 | $ | 6,848.86 | $ | 65,118.47 |
| $ | 73.26 | $ | 7,909.58 | $ | 501,960.39 |
| | | | | | |
| | 562,002.36 | | | | 562,002.36 |
| | 13,907.19 | | | | 184,173.51 |
| $ | 575,909.55 | $ | 0.00 | $ | 746,175.87 |
| $ | 575,909.55 | $ | 0.00 | $ | 746,175.87 |
| $ | 575,982.81 | $ | 7,909.58 | $ | 1,248,136.26 |
| | | | | | |
| | 14,397,727.82 | | | | 14,397,727.82 |
| | | | | | -27,500.02 |
| | 22,357.32 | | -7,123.68 | | -626,179.19 |
| $ | 14,420,085.14 | -$ | 7,123.68 | $ | 13,744,048.61 |
| $ | 14,996,067.95 | $ | 785.90 | $ | 14,992,184.87 |
| | | | | | |
| $ | (0.00) | $ | 0.00 | $ | - |  Check Figure

67

# EXHIBIT B

68

# EXHIBIT C

*Portions of this email relating to settlement discussions have been redacted as not relevant to the present motion.*

69

 Gmail

Cynthia <cynthiadblanchard@gmail.com>

## Personal Safety and Proposed Resolution Regarding Claim No. 2-2 filed in Copper Tree, Inc., and Claim No. 1-2 filed in Green Copper Holdings, LLC,

**Cynthia** <cynthiadblanchard@gmail.com>
To: Pat Malloy <pjmiiim@sbcglobal.net>
Cc: Mark Sanders <msanders@gablelaw.com>
Bcc: Cynthia French blanchard <cdfblanchard@gmail.com>

Thu, Aug 7, 2025 at 3:50 PM

Pat,

I'm writing in advance of the upcoming public conference call to address a serious ongoing safety concern and to propose a potential resolution regarding my claim.

As you know, I have been the target of sustained stalking and harassment by Michael Eric Nelson for over six years. His behavior has been threatening, predatory, and persistent — including direct interference with this bankruptcy process and the auction itself. His arrest and subsequent felony computer crimes trial in Washington County in February 2023 led to a dangerous pattern of retaliation and escalation, which you have personally witnessed. His current whereabouts is unknown, and I believe he is a serious, unpredictable and ongoing threat. To my knowledge, this matter remains under the jurisdiction of the U.S. Attorney's Office, although I have not received any recent updates regarding its status.

Due to this ongoing risk, I cannot appear in any public setting — including virtual hearings — as doing so could compromise my personal safety. If necessary, I will submit a written statement to the docket, but I will not participate in any public or semi-public proceeding. Any forum that Michael Eric Nelson can access, he will exploit — using it to further harass me, disrupt the court process, and target those associated with these proceedings.



I am submitting this pro se, so if there is a more formal process I need to follow to ensure this is properly reviewed and considered by the estate, please let me know. I'd appreciate your thoughts when convenient, ideally within the next week if possible, so I can plan accordingly.

Thank you very much for your time and consideration of this matter.

Best,

Cynthia

70

# EXHIBIT D

*Portions of this email have been redacted to remove personal contact information not relevant to the present motion.*

7/

## Gmail

Cynthia <cynthiadblanchard@gmail.com>

## Re:

**Pat Malloy** <pjmiiim@sbcglobal.net>
To: Cynthia French blanchard <cdfblanchard@gmail.com>
Cc: Mark Sanders <msanders@gablelaw.com>, Ron Brown <ron@ronbrownlaw.com>, Cynthia <cynthiadblanchard@gmail.com>

Fri, Aug 8, 2025 at 9:27 AM

For Settlement Purposes Only

I am not aware of the US Attorney being involved in anything related to Nelson. You might call ▬▬▬▬▬ who is an attorney in that office and I think is familiar with this case. He may have some information re Nelson. I can advise that he is not likely to discuss anything that is ongoing.

[Quoted text hidden]

72

Respectfully submitted this 6th day of April, 2026.

Cynthia Blanchard, Pro Se
414 SE Washington Blvd., Suite 205
Bartlesville, OK 74006
Telephone: (310) 435-5707
Email: cynthiadblanchard@gmail.com

## CERTIFICATE OF SERVICE

I, Cynthia Blanchard, appearing pro se, hereby certify that on this 6th day of April, 2026, a true and correct copy of the foregoing Appendix to Amended Appellant's Opening Brief was filed with the Clerk of the United States District Court for the Northern District of Oklahoma.

I further certify that, pursuant to the Court's CM/ECF system, electronic service will be made upon all registered participants, including Appellee, Patrick J. Malloy, III, Chapter 7 Trustee, and his counsel of record.

Cynthia Blanchard, Pro Se
414 SE Washington Blvd., Suite 205
Bartlesville, OK 74006
Telephone: (310) 435-5707
Email: cynthiadblanchard@gmail.com

74